ELDRED v. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-112-CR

MARK ANDREW ELDRED APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

In eight points, Appellant Mark Andrew Eldred appeals from his conviction of aggravated assault with a deadly weapon.  Following a jury trial on December 17, 2003, Appellant was found guilty.  He pled true to a sentence enhancement offense, and following a punishment hearing, the jury assessed his punishment at life imprisonment.  We will affirm. 

Background Facts

On December 8, 2002, Flower Mound police responded to a call reporting a stabbing at a party in a residential neighborhood.  Jason Taylor was the first officer to arrive at the house.  He immediately observed signs that a fight had occurred and noticed bloodstains near the house.  In order to preserve the crime scene, Officer Taylor told the twenty to thirty people who were at the house to go stand in the driveway.  When Detective Raymond Walker and Detective Misty Sparby arrived at the house, a witness told them that a stabbing had occurred and that there was a large amount of alcohol at the party.  Taylor interviewed approximately ten people who were present at the party in an effort to discover what had happened. 

According to the testimony of the witnesses present at the party, Bret Taylor, the victim, was asked to arm wrestle by Dustin Rachal.  Many of the people present at the party were drinking or intoxicated, and somehow the arm wrestling match angered one or several individuals present and a fight erupted between the victim and Rachal.  The first punch was thrown by Jeremy Baxley, a friend of Rachal and Appellant, and the fight escalated into a brawl and traveled throughout the house.  Several people continued to attack Taylor throughout the fight.  At some point during the brawl, Appellant’s girlfriend, Christina Seal, was inadvertently hit in the nose causing it to bleed.  Amanda Ciccarello, who was present at the party, testified that a male approached Seal after she had been hit and asked her who had hit her.  He responded that he was “going to f- - - - - - kill him.”  Ciccarello stated that she went to the backyard where the victim was and that she saw this man hit the victim in the back a couple of times.  She also testified that she saw blood coming from the victim’s shirt as he tried to crawl through a hole in the fence to get away.  She testified that the person whom she saw attacking the victim had a tattoo on his forearm of a heart and a knife and that this person appeared to be more heavily tattooed than other people at the party.

Taylor testified that he did not realize he had been stabbed until he was in his friend’s car.  He was taken to a Lewisville hospital and then transferred by Careflight to Parkland Hospital.  Taylor received six to seven stab wounds, three that were very serious.  Appellant was arrested and charged with aggravated assault with a deadly weapon.  He pled not guilty.  A jury found Appellant guilty and he was sentenced to life imprisonment.  This appeal followed.

Jury Charge Error

In point one, Appellant argues that the trial court erred by failing to charge the jury that it could consider evidence of an extraneous offense admitted at the guilt/innocence phase of the trial for limited purposes only.  Although Appellant references multiple offenses contained in the motion to revoke probation, the only offense mentioned during the guilt/innocence portion of the trial was during Detective Sparby’s testimony, and it concerned the retaliation offense.  The two other unadjudicated offenses of which Appellant complains were introduced during the punishment phase of the trial when the State introduced a pen packet containing documents pertaining to these unadjudicated offenses. 

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State
, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court’s refusal to rule.  
Tex. R. App. P.
 33.1(a)(2); 
Mendez v. State
, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

An extraneous offense limiting instruction must be requested at the time the evidence is introduced during the guilt/innocence phase.  
Hammock v. State
, 46 S.W.3d 889, 893-94 (Tex. Crim. App. 2001).  Otherwise, the evidence is admitted for all purposes.  
Id.
 at 895; 
see also 
Tex. R. Evid. 
105(a).  Appellant contends that part of the Detective Sparby’s testimony constituted evidence of the extraneous offense of retaliation, but Appellant did not object or request a limiting instruction at the time the testimony was given.  Consequently, the evidence was admitted for all purposes, and Appellant was not later entitled to  a contemporaneous limiting instruction.  
See Hammock, 
46 S.W.3d at 895.  We hold that Appellant has not preserved anything for our review.  Point one is overruled.

Appellant argues in his second point that the trial court erred by failing to instruct the jury during the punishment phase of the trial that it could not consider extraneous offenses unless they were proven beyond a reasonable doubt.  Appellant did not object to the jury charge nor did he request a limiting instruction on the extraneous offense evidence.

Evidence of extraneous offenses may not be considered in assessing punishment until the factfinder is satisfied beyond a reasonable doubt that such offenses are attributable to the defendant.  
Huizar v. State
, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000) (op. on reh’g).  Once the factfinder is satisfied beyond a reasonable doubt that such offenses are attributable to the defendant, the factfinder may use the extraneous offense evidence however it chooses in assessing punishment. 
 Id
.  The reasonable doubt standard set out in article 37.07, section 3(a) of the code of criminal procedure is “law applicable to the case,” and thus the jury must be instructed on the burden of proof when the State introduces evidence of extraneous bad acts at the punishment phase of the trial.  
Id
. at 484.  Failure to 
sue sponte 
give a reasonable doubt instruction at punishment regarding extraneous offense evidence may be error subject to the 
Almanza
 harm analysis.  
Ellison v. State
, 86 S.W.3d 226, 227-28 (Tex. Crim. App. 2002); 
Huizar
, 12 S.W.3d at 484-85.  Because Appellant did not object at trial to the error in the court’s charge, we must decide whether the error was so egregious and created such harm that Appellant did not have a fair and impartial trial—in short, that “egregious harm” has occurred. 
 Almanza v. State
, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g);
 see 
Tex. Code Crim. Proc. Ann
. art. 36.19 (Vernon 1981) (providing the manner for appellate review for jury charge error); 
Hutch v. State
, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (holding that if jury charge error occurs the court must determine if the error causes sufficient harm to warrant reversal).

In making this determination, “the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.”  
Almanza
, 686 S.W.2d at 171; 
see generally Hutch
, 922 S.W.2d at 172-74.  The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused.  
Almanza
, 686 S.W.2d at 174.  Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis.  
Ellison
, 86 S.W.3d at 227; 
Hutch
, 922 S.W.2d at 171. 

Two other unadjudicated offenses were introduced during the punishment phase when the State, without objection, introduced a pen packet that contained court documents including final judgments and the two unadjudicated offenses of aggravated assault and attempted theft.  The State acknowledges that no reasonable doubt instruction was given 
sua sponte 
by the trial court regarding the challenged extraneous offenses.  However, the State asserts that Appellant was not egregiously harmed by the lack of the instruction.  We agree. Here, the failure to include a “reasonable doubt” standard in the jury charge was not so egregious that Appellant failed to receive a fair and impartial trial.  The complained-of offenses were contained in a fifty-four page exhibit offered by the State.  The State introduced no additional evidence regarding the allegations contained in the pen packets; furthermore, the State did not orally mention any of the complained-of offenses during the State’s closing argument.  The only method whereby the jury would have been informed of the extraneous offenses at issue is upon a careful reading of the fifty-four page exhibit of pen packets.  Given the short deliberation time of the jury, there is nothing in the record to indicate that the focus during the punishment phase was on those particular pages of the pen packet containing the offenses.

Based on our review of the entire record of Appellant’s trial, including the charge, the state of the evidence, the contested issues, the range of punishment, the weight of the probative evidence, the arguments of counsel, and all relevant information revealed by the record of the trial as a whole, we are unable to conclude that the trial court’s error in failing to instruct the jury in the punishment phase charge concerning the extraneous offenses is so egregious and created such harm that Appellant did not receive a fair and impartial trial.  
See Almanza
, 686 S.W.2d at 171.  We overrule Appellant’s second point.

In point three, Appellant complains that the trial court erred by failing to instruct the jury that a plea of true to an allegation in the motion to revoke probation or the motion to adjudicate guilt does not constitute proof beyond a reasonable doubt that he committed the offenses alleged.  However, the State calls our attention to the fact that there is no “plea of true” contained in the language of the motions.  Furthermore, Appellant acknowledges in his brief that “it is not clear” whether Appellant pled true to these allegations.  Indeed, a careful review of the record by this court does not indicate that Appellant actually pled true to these allegations.  The judgments merely state that the court found that Appellant had violated the terms and conditions of his probation.  Therefore, we need not further address Appellant’s complaint.  We overrule Appellant’s third point.

Admission of Extraneous Offense Evidence

In points four, five, and six, Appellant raises additional points related to the three extraneous acts discussed previously.  In point four, Appellant claims that the trial court erred by failing to determine the threshold admissibility of the unadjudicated offenses before admitting them into evidence.  In point five, Appellant argues that the evidence was not sufficient to show that Appellant committed the extraneous offenses beyond a reasonable doubt.  In point six, Appellant argues that he was denied due process because he was sentenced based on untrue or unreliable information regarding the extraneous offenses. An appellate court reviews the trial court’s decision to admit extraneous offense evidence under an abuse of discretion standard.  
Mitchell v. State
, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996).  We point out that Appellant couches his fifth point in terms of legal sufficiency, and a challenge to the legal sufficiency of the evidence supporting a conviction cannot be forfeited for failure to object at trial.  
See Moff v. State
, 131 S.W.3d 485, 490 (Tex. Crim. App. 2004).  However, when an appellant complains on appeal of the sufficiency of the evidence of an extraneous offense at punishment, his complaint is not truly about sufficiency.  Rather, his complaint goes to the admission of the evidence.  
See Malpica v. State
, 108 S.W.3d 374, 378-79 (Tex. App.—Tyler 2003, no pet.).  That is, Appellant’s complaint on appeal is a claim of evidentiary trial error—a complaint that can be forfeited for the failure to object at trial.  
See Moff
, 131 S.W.3d at 490.  Because the verdict on a non-capital case is a general verdict, an appellate court is unable to determine whether a jury actually considered the extraneous conduct evidence or if it affected the jury’s determination of punishment.  
Thompson v. State
, 4 S.W.3d 884, 886 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d).  Therefore, we do not review the sufficiency of the evidence of the extraneous offense to support the jury’s assessment of punishment.  We construe Appellant’s complaint as a challenge to the admission of the extraneous offense evidence.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley
, 983 S.W.2d at 265.  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court’s refusal to rule.  
Tex. R. App. P.
 33.1(a)(2); Mendez, 138 S.W.3d at 341.
 

Here, Appellant stipulated that he was the person identified in the pen packets offered by the State and made no objection when the documents were offered into evidence.
(footnote: 2)  Furthermore, he did not object that the extraneous offense evidence contained in the pen packets was unreliable or that the evidence was legally insufficient to establish assault or theft.  Because Appellant failed to object at trial, he has not preserved his complaints for appellate review.  We overrule Appellant’s fourth, fifth, and sixth points.

Ineffective Assistance of Counsel

In his seventh point, Appellant claims he was denied effective assistance of counsel.  
We apply a two-pronged test to ineffective assistance of counsel claims.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Thompson v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  First, Appellant must show that his counsel's performance was deficient; second, Appellant must show that the deficient performance prejudiced the defense.  
Strickland
, 466 U.S. at 687, 104 S. Ct. at 2064; 
Hernandez v. State
, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.  
Thompson
, 9 S.W.3d at 813.  The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  
See Strickland
, 466 U.S. at 688-89, 104 S. Ct. at 2065.  “[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.”  
Id.
 at 690, 104 S. Ct. at 2066.  An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.  
Thompson
, 9 S.W.3d at 813.  
A defendant bears the burden to prove ineffectiveness of counsel and must overcome a presumption that the challenged actions might be considered sound trial strategy—and that burden is difficult when, as here, the defendant did not file a motion for new trial asserting ineffectiveness of counsel.  
Brown v. State
, 155 S.W.3d 625, 631 (Tex. App.—Fort Worth 2004, pet. ref’d).  Our scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight.  
Strickland
, 466 U.S. at 689, 104 S. Ct. at 2065.

The second prong of 
Strickland
 requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable.  
Id.
 at 687, 104 S. Ct. at 2064.  In other words, Appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  
Id.
 at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  
Id.
  The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.  
Id.
 at 697, 104 S. Ct. at 2070.

In the present case, Appellant contends that he received ineffective assistance of counsel because his trial counsel 1) failed to request notice of extraneous offenses to be used by the State during the guilt/innocence and punishment portions of trial, 2) failed to object to hearsay testimony, 3) failed to request limiting instructions during the guilt/innocence phase of the trial, 4) failed to request reasonable doubt instructions during the punishment phase, 5) failed to object to the portions of the pen packets that contained the extraneous unadjudicated offenses, 6) failed to request that the trial court make a threshold determination of admissibility concerning the offenses, 7) failed to object to the extraneous offenses during the punishment phase, and 8) failed to request a record of the jury voir dire.

Here, Appellant’s ineffective assistance of counsel claim fails because the record is devoid of evidence regarding trial counsel’s reasons or strategy concerning the challenged actions.  By not seeking those explanations, Appellant has failed to overcome the presumption that the challenged actions were sound trial strategy.  
See Thompson
, 9 S.W.3d at 812. Because Appellant failed to meet his burden under 
Strickland
, we overrule his seventh point.

Legal and Factual Sufficiency

In Appellant’s eighth point, he complains that the evidence was legally and factually insufficient to support the verdict.  Specifically, he asserts that the evidence was insufficient to prove that he was the person who stabbed the victim, Bret Taylor.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In contrast, when reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or 2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.

In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

In the instant case, several witness testified regarding the events that occurred on the night of the stabbing.  Dustin Rachal, Jeremy Baxley, and Melissa Baxley all testified that Appellant said that he had stabbed someone. Specifically, Rachal stated that after the fight, he and several others drove to the home of Christina Seal’s mother.  Afterwards, Appellant and Seal, his girlfriend, arrived.  Rachal testified that Appellant took a knife out of his pocket that had red spots on it and said, “Dude, I just stabbed that guy.”  Baxley also testified that he heard Appellant say that he “stabbed that fool.”  Finally, Melissa Baxely stated that she also went to Seal’s house after the fight and heard Appellant say, “I had to stab somebody.” 

Furthermore, Appellant was identified as wearing a tan-colored sweater and white hat at the party.  There was also testimony that Appellant had various tattoos on his body.  Joshua Landry testified that the tattoos pictured in State’s exhibits 13, 14, 15, and 16 were the type he saw on the man who stabbed the victim, but Landry could not identify any specific tattoos.  Richard Goodman testified that during the fight the man who was wearing the tan-colored sweater came into the backyard, yelling, “Who hit my girl in the face?”  The man joined the fight, and Goodman specifically identified tattoos in State’s exhibits 13 and 16 as tattoos this man had.  Goodman stated that he never saw a knife, but that after the fight stopped, the man with the tattoos said, “You keep messing with me, I’m going to slit your throat.”  Tara Rice testified that she saw Seal after Seal was injured at the party.  Rice stated that she saw Seal walking down a hallway saying, “Stop him, stop him.  He has a knife, he has a knife.  He’s going to kill him.” 

The jury, as fact finder, was entitled to judge the credibility of the witnesses and could have chosen to believe all, some, or none of the testimony presented.  
See Chambers v. State
, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); 
see also Zuniga
, 144 S.W.3d at 481.  Therefore, it was entirely within the province of the jury to believe or disbelieve all, some, or none of Rachal’s, Jeremy Baxley’s, Melissa Baxley’s, Landry’s, Goodman’s and Rice’s testimony. 
See Chambers
, 805 S.W.2d at 461.  Thus, viewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found that Appellant was the person who stabbed Bret Taylor.  
Jackson
, 443 U.S. at 319.  Furthermore, viewing all the evidence in a neutral light, favoring neither party, we also conclude that the evidence supporting the verdict, taken alone, is not too weak to support the finding of guilt beyond a reasonable doubt and that the contrary evidence is not so strong that guilt cannot be proven beyond a reasonable doubt.  
Zuniga
, 144 S.W.3d at 481.  Accordingly, we hold that the evidence is both legally and factually sufficient to support Appellant’s conviction for aggravated assault with a deadly weapon.  We overrule Appellant’s eighth point. 

Conclusion

Having overruled Appellant’s eight points on appeal, we affirm the trial court’s judgment.

PER CURIAM

PANEL A:  HOLMAN, J.; CAYCE, C.J.; and SAM J. DAY, J. (Retired, Sitting by Assignment)

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  July 7, 2005

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
We recognize that the reporter’s record states that “Defense will stipulate and allow now [sic] objection on that, your Honor.”  However, a complete reading of the record indicates that Appellant did not object to the admission of the pen packets contained in State’s exhibit 69.